# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IVOR G. LUKE | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-00834 (RC) |
| | : | | |
| v. | : | Re Document No.: | 3 |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION TO DISMISS

## I.  INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss.  The

plaintiff previously served as a Hospital Corpsman Second Class in the United States Navy. The

defendant is the United States.  The plaintiff brings suit against the United States alleging that

the Court of Appeals for the Armed Forces deprived him of a full and fair hearing, and that his

conviction was unconstitutional. The plaintiff claims that this court has subject matter

jurisdiction pursuant to 28 U.S.C. § 1331.  The defendants move to dismiss the plaintiff's claims,

asserting that the plaintiff's claim is barred for lack of subject mater jurisdiction, or, in the

alternative, that the plaintiff failed to state a claim upon which relief can be granted.  For the

reasons discussed below, the Court grants the defendant's motion.

## II.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Ivor Luke ("the plaintiff") previously served as a Hospital Corpsman Second Class in the

United States Navy. Compl. ¶ 2. The plaintiff was convicted by a general court-martial of two

specifications of indecent assault in violation Article 134 of the Uniform Code of Military Justice

("UCMJ"), 10 U.S.C. § 934, based on an incident between the plaintiff and a shipmate, Seaman Recruit TN ("TN"). Compl. ¶¶ 4, 5; *United States v. Luke*, NMCCA 200000481, 2004 CCA LEXIS 218, at *1 (N-M. Ct. Crim. App. Sept. 28, 2004). The plaintiff names the United States ("the defendant") as the sole defendant in the present action. The plaintiff claims that his constitutional rights were violated when the Court of Appeals for the Armed Forces ("CAAF") affirmed his conviction despite the fact that the expert witness that prepared the DNA samples in his case was discredited subsequent to trial.  The plaintiff also claims that he was denied a full and fair review when the CAAF did not review one of the issues it had assigned for review, but did not reach, when the case made a previous trip to that appellate court. Compl. ¶¶ 24, 25.

Sometime in 1988, in his capacity as a Hospital Corpsman, the plaintiff examined shipmate Fireman A, during which a skin rash was discovered. *Id.*  Fireman A conveyed that the rash might be a result of his sexual activities with TN, *id*, after which the plaintiff informed Fireman A that he planned to report TN and Fireman A's relationship as a violation of the ship's "no-dating" policy. *Id.* ¶ 5.

At some point after the plaintiff examined Fireman A, TN went to the medical spaces to be examined for a possible sexually transmitted disease.[1] *Id.* ¶ 8.  At trial, TN testified that, while in the plaintiff's company, he sexually assaulted her instead of giving her a proper medical examination. *Id.* ¶ 8; *Luke*, 2004 CCA LEXIS 218, at *3. The plaintiff denied any physical

---

[1] According to the plaintiff's complaint, TN "visited the facility where Plaintiff worked in search of Fireman A . . . [and] spent a few minutes in the medical spaces looking for Fireman A in the restroom and back room where a phone was located and left the medical spaces upset over plaintiff's intention to report her relationship with Fireman A and lamenting its potential for disciplinary action." Compl. ¶ 8. The complaint also notes that TN testified that, while she was in the medical spaces, the plaintiff "examined her on a bed in the sleeping quarters for the possibility of a sexually transmitted disease, and that that she was sexually assaulted during the examination." *Id.*

contact with TN during this visit, and claimed that TN left the medical spaces upset because of the plaintiff's intention to report her relationship with Fireman A. Compl. ¶¶ 7, 8.

On February 22, 1999, a general court-martial composed of "members with enlisted representation" heard the plaintiff's case. *Id*. ¶¶ 4, 9. The prosecution presented two experts from the United States Army Criminal Investigations Laboratory ("USACIL"), one of which was Phillip Mills ("Mills"), previously a forensic chemist. *Id*. ¶ 9. Mills performed the serology analysis of TN's bra and the sheet from the bed on which the assault had allegedly occurred. Compl. ¶¶ 10, 12. Mills testified before the court-martial that the presence of amylase and epithelial cells on both the bed sheet from the medical spaces and on TN's under garments supported TN's allegations of sexual assault. *Id*. ¶ 12; Def.'s Mot. at 6. Another USACIL examiner, Marilyn Chase ("Chase"), conducted the subsequent DNA sequencing and analysis, and "testified that her analysis was dependent upon the integrity of [] Mills' serology testing." *Id*. ¶ 11.

On September 28, 2004, the Navy-Marine Corps Court of Criminal Appeals ("NMCCA") affirmed the court-martial's findings and affirmed the plaintiff's conviction and sentence. *Id*. ¶ 16. The plaintiff then appealed the NMCCA's decision to the CAAF, which granted his petition for review and heard oral argument on two issues: first, whether the lower court erred when it upheld the trial judge's exclusion during cross-examination of evidence concerning TN's abortion, after it became relevant and material rebuttal to her testimony;[2] and second, whether the lower court erred when it upheld the government's failure to disclose evidence that it had

---

[2] According to the plaintiff's complaint, at the time of the events in question, TN was pregnant with Fireman A's child; the pregnancy, however, was not known at the time of the incident but was revealed during the subsequent investigation. Compl. ¶¶ 5, 6. It was the plaintiff's theory at trial that the fact of the abortion, which the plaintiff theorizes was obtained in order to conceal TN's relationship to Fireman A, demonstrated the lengths to which TN went to conceal that relationship, making it more credible that, for the same purpose, she would fabricate the claim that plaintiff sexually assaulted her. Compl. ¶ 19.

prepared to use on re-direct examination of a government witness.[3] *Id.* ¶¶ 17, 18. The CAAF also

granted review of a supplemental issue, which is at the heart of these proceedings: whether the

plaintiff's conviction could be rightfully affirmed in light of the fact that evidence of fraudulent

DNA testing had been newly discovered. Def.'s Mot. at 4; *see* Compl. ¶ 30.

      The current challenge to Mills's testimony arises out of a USACIL-issued memorandum

identifying Mills as having conducted serology tests utilizing improper practices and attributing a

falsified entry to him during an unrelated DNA analysis. Compl. ¶¶ 20, 21 ("[T]echnicians

determined that Mills had represented on several documents that he had completed a step of a

forensic test that he had never conducted and then fabricated the results of that step.").

According to the plaintiff's complaint, the USACIL investigation of Mills uncovered "substantial

evidence of dishonesty, sloppiness and incompetence in [his] work product during his time at

USACIL." Compl. ¶ 23.   The plaintiff claims that, although USACIL's investigation concluded

that Mills's serology work was incorrect more than 55 percent of the time, USACIL destroyed

the DNA evidence from the plaintiff's case, foreclosing the ability to re-test it.  *Id.* ¶¶ 24, 25. The

defendant conversely notes that a 2005 USACIL review of Mills's serology work revealed that

his "major flaw was a failure to locate stains," Def.'s Mot. at 7, and "found no evidence that []

Mills falsified any serology data in [the p]laintiff's or any other case."  *Id.*  The defendant further

asserts that the "NMCCA also held that, even without the forensic evidence in the case, the

Government's case was strong enough to prove [the p]laintiff's guilt," Def.'s Mot. at 7, noting

that TN's testimony was corroborated by both Fireman A and an impartial third party, and that

---

[3] In light of its findings on the supplemental issue concerning forensic chemist Mills, the CAAF
found that it would be premature to address the first two issues.  Compl. ¶ 19 ("The first issue
involved an assignment of error asserted before the NMCCA, [and a]lthough the NMCCA held
the assignment of error was without merit, CAAF granted and held argument review on the issue
and manifestly refuse [sic] to render a decision on the issue.").

TN reported the incident regardless of having to reveal her inappropriate romantic relationship with Fireman A. *Id.*

Pursuant to the findings regarding Mills's suspect handling of DNA samples, the CAAF set aside the NMCCA's opinion affirming the conviction, returned the record of trial to the Judge Advocate General of the Navy for a *Dubay* hearing,[4] and directed that the record be returned to the CAAF. Compl. ¶ 31; Def.'s Mot. at 5; *see United States v. Dubay*, 17 U.S.C.M.A. 147 (1967). The military judge conducted two subsequent *Dubay* hearings in June 2006 and August 2008, respectively, both of which addressed an ongoing internal USACIL investigation of Mills's prior work. Compl. ¶¶ 32, 33; Def.'s Mot. at 5. The plaintiff alleges, however, that these hearings were "exercises in futility because NCIS had, as a result of USACIL's negligence, destroyed the evidence, thereby eliminating any chance at retesting and ultimately undermining the very reason for CAAF to order the hearings by precluding the retesting necessary to answer the fundamental question of contamination of the evidence[.]"[5] Compl. ¶ 33. After receiving the final USACIL report and considering it alongside the findings from the two *Dubay* hearings, the NMCCA affirmed the findings and the plaintiff's original sentence on July 31, 2009. *Id.* ¶ 34. The NMCCA also concluded that the plaintiff's original assignments of error were without merit. *United States v. Luke*, 2009 WL 2345124, at *7 (N. M. Ct. Crim. App. July 31, 2009).

---

[4] The CAAF found that post-trial developments presented sufficient evidence to warrant a further fact-finding inquiry on the plaintiff's "claim of contamination of his DNA sample and falsification of his test results." Compl. ¶ 31; Def.'s Mot. at 4 ("In particular, the CAAF addressed a memorandum issued by USACIL to all staff judge advocates in August 2005, over six years after Plaintiff's court-martial and one month prior to the oral argument on the two issues initially granted, warning about an internal quality control review in April 2005 that detected a falsified entry by a DNA examiner that led to the examiner's suspension from DNA casework.").

[5] These assertions are ultimately unsubstantiated, because there is nothing contained in the current record that indicates that the plaintiff was prejudiced without retesting of the evidence, or that retesting would have uncovered information that would have led to a different verdict. *See, e.g.*, *United States v. Burns*, 495 F.3d 873, 875 (8th Cir. 2007).   *See infra* at 17-18.

On the case's return to the Court of Appeals, the CAAF granted review of the plaintiff's case for three issues: (1) whether the results of the plaintiff's trial are not reliable in light of newly discovered evidence of Mills's misconduct;  (2) whether the military judge erred when he found the government was not required to disclose evidence prepared for use on re-direct examination of a Government witness; and (3) whether the plaintiff's due process rights were violated by the untimely post-trial processing and appellate review of his court-martial.  *United States v. Luke*, 69 M.J. 309, 311 (C.A.A.F. 2011).  The CAAF did not grant review of the issue on which it had previously granted review: whether the lower court erred when it upheld the trial court's exclusion of evidence concerning TN's abortion after it became material rebuttal to her testimony. *Id*.

On January 25, 2011, the CAAF affirmed the NMCCA's decision and denied all three of the plaintiff's assignments of error on appeal.  *Id.*  Applying the standard contained in R.C.M. 1210(f)(2) for a new trial based on newly discovered evidence, the CAAF specifically held, despite the plaintiff's arguments to the contrary, that the newly discovered evidence involving Mills's misconduct would probably not have resulted in a substantially more favorable result for the plaintiff, *Luke*, 69 M.J. at 318, and based this conclusion on the USACIL finding that Mills's defective testing resulted in false negatives rather than false positives. *Id*.; *See United States v. Brooks*, 49 M.J. 64, 69 (C.A.A.F. 1998) (finding that the appropriate inquiry is "whether the newly discovered evidence, if considered by a court-martial in light of all other pertinent evidence, would probably produce a substantially more favorable result of the accused.").  The CAAF "found that 'the report did not contain any evidence of contamination or false reporting in Mills' serological analysis between 1995 and 1999,' the time period during which [] Mills

worked on [the p]laintiff's case." *Luke*, 69 M.J. at 316.  The CAAF concluded that the newly

discovered evidence did not warrant a new trial under R.C.M. 1210(f)(2). *Id.* at 318.

It is from this CAAF ruling that plaintiff brings suit in this Court.  In his complaint,

plaintiff claims, based on the standard set forth in *Mesarosh v. United States*, 352 U.S. 1 (1956),

that his constitutional rights were violated when the CAAF affirmed his conviction despite it

being undermined by the post-trial discrediting of Mills's lab work.  Plaintiff also claims that

CAAF deprived him of a full and fair hearing by failing to rule on the plaintiff's original

assignments of error. Compl. ¶¶ 49, 50, 51.  The defendant has moved to dismiss both of the

plaintiff's claims.  For the reasons set forth below, the defendant's motion to dismiss is granted.

## III.  STANDARDS OF REVIEW

### A.  Legal Standard for a Rule 12(b)(1) Motion to Dismiss

The defendants move to dismiss this case pursuant to Rule 12(b)(1), or, in the alternative,

Rule 12(b)(6). A Rule 12(b)(1) motion "imposes an affirmative obligation to ensure that it is

acting within the scope of its jurisdictional authority," and gives the plaintiff the burden of

establishing that the court has jurisdiction. *Grand Lodge of Fraternal Order of Police v.*

*Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). "Because subject-matter jurisdiction focuses on

the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an

affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."

*Id*. at 13-14. In considering a Rule 12(b)(1) motion to dismiss, the court need not limit itself to

the allegations in the complaint, but may consider such materials outside of the pleadings as it

deems appropriate to resolve the question of whether it has jurisdiction in the case.  *Id.* (citing

*Scolaro v. D.C. Board of Elections and Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).  Even so,

the plaintiff's factual allegations in the complaint bear close scrutiny in resolving a 12(b)(1)

motion. *See id*.

### B.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The

motion does not test the plaintiff's ultimate likelihood of success on the merits, but rather,

whether the plaintiff has properly stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The complaint is only required to set forth a short and plain statement of the claim, in order to

give the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park

Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A court considering a Rule 12(b)(6) motion presumes the factual allegations of the

complaint to be true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States

v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the

plaintiff to plead all elements of his *prima facie* case in the complaint, *Swierkiewicz v. Sorema

N.A.*, 534 U.S. 506, 511–14 (2002), nor to plead law or match facts for every element of a legal

theory, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal citations omitted).

Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 562 (2007).  A claim is facially plausible when the pleaded factual content "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has

acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  The court need not accept as true

inferences unsupported by facts set out in the complaint or legal conclusions cast as factual

allegations.  *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292

F.3d at 242.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

555).

### C. Jurisdiction and Standard of Review for Military Court Decisions

#### 1. Jurisdiction

The plaintiff, who is no longer in custody, collaterally attacks his conviction asserting

that this Court may review the CAAF's decision pursuant to its federal question jurisdiction.

Collateral attacks on court-martial proceedings are not confined to habeas petitions.  *Kauffman v.

Secretary of the Air Force*, 415 F.2d 991 (D.C. Cir. 1969).  A district court has subject matter

jurisdiction to hear a non-custodial plaintiff's collateral attack based on federal question

jurisdiction. *Sanford v. United States*, 586 F.3d 28, 31 (D.C. Cir. 2009).  Thus, while *habeas*

review is appropriate for convicted military personnel who are still in custody, for non-custodial

individuals such as plaintiff, federal question jurisdiction under 28 U.S.C. § 1331 is the

appropriate avenue for a service member to seek collateral review of the outcome of a military

court-martial proceeding. *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir.

2006) (holding that the district court had subject matter jurisdiction to hear the petitioner's

collateral attack under § 1331) ("*New II*"); *Williamson v. Sec'y of the Navy*, 395 F.Supp. 146, 147

(D.D.C.1975) (same).

## 2.  Standard of Review

Although, as set forth above, this Court's jurisdiction to hear the plaintiff's challenge is clear, the applicable standard of review to apply has been described by the D.C. Circuit as "tangled." *New II*, 448 F.3d at 406.  "Two lines of precedent are relevant: the first deals with the 'full and fair consideration' standard that applies for habeas review of courts-martial, and the second deals with the 'void' standard that applies to collateral attacks on court-martial proceedings by persons who are not in custody."  *Sanford*, 586 F.3d at 31.  Both lines are addressed below, as well as the Circuit's attempt to reconcile them.

The first line of precedent goes back sixty years when the Supreme Court addressed a challenge to courtsmartial brought by *habeas* petitioners who had been found guilty of murder and rape and sentenced to death.  *Burns v. Wilson*, 346 U.S. 137 (1953).  The petitioners alleged that their court-martial proceedings denied them the basic rights guaranteed by the Constitution. *Id.*  The Supreme Court held that, "when a military decision has dealt fully and fairly with an allegation raised in [a *habeas*] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence."  *Id.* at 142.  Thus, when the record makes it plain that the military courts have heard the petitioners out on every significant allegation, "it is not the duty of the civil courts to repeat that process – to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus.  It is the limited function of the civil courts to determine whether the military has given fair consideration to each of the[] claims."  *Id.* at 144.

Sixteen years later, in a case involving a non-custodial plaintiff, the D.C. Circuit put its gloss on the *Burns* standard.  *Kauffman*, 415 F.2d at 991.  The Circuit read the deferential standard set forth in *Burns* to apply to the military courts' findings of fact, similar to the general

non-reviewability of state court factual findings upon *habeas* review.  *Id.* at 997.  The reason for

this limited review is clear: "the enactment of the Uniform Code of Military Justice and the

establishment of the Court of Military Appeals made up of civilian judges to enforce its

procedural guarantees are proof of Congress' concern that the system of military justice afford

the maximum protection to the rights of servicemen." *Kauffman*, 415 F.2d at 995-96.  But, with

respect to review of military rulings on constitutional issues, the *Kauffman* court required the

application of a "fairness" standard.  *Id.*  "[T]he test of fairness requires that military rulings on

constitutional issues conform to Supreme Court standards, unless it is shown that conditions

peculiar to military life require a different rule."  *Id.*

    A few years later, in a case involving a challenge to a court-martial proceeding prior to

any conviction, the Supreme Court returned to the subject of the appropriate standard of review.

*Schlesinger v. Councilman*, 420 U.S. 738 (1975).  The Court held that collateral relief from the

consequences of a court-martial judgment is barred unless it appears that the judgment is void.

*Id.* at 746-48.  But a judgment "is not rendered void merely by error . . ."; the defect must be

fundamental.  *Id.*  The question of whether a judgment may properly be deemed void turns "on

the nature of the alleged defect, and the gravity of the harm from which relief is sought."  *Id.* at

753.  "Moreover, both factors must be assessed in light of the deference that should be accorded

the judgments of the carefully designed military justice system established by Congress."  *Id.*

Shortly thereafter, in an opinion that neither cites *Burns* nor *Kauffman*, the D.C. Circuit adopted

the *Schlesinger* void standard in a non-custodial collateral attack on a conviction by court-

martial.  *Priest v. Sec'y of Navy*, 570 F.2d 1013, 1015 (D.C. Cir. 1977).

    More recently, in *New II*, a non-custodial collateral attack to a court-martial conviction,

the D.C. Circuit attempted to reconcile the differing standards of review to be applied.  Tracing

the steps of the above-referenced cases along with the evolution of *habeas* review over the years

until the 1996 Antiterrorism and Effective Death Penalty Act, the Court advised caution,

expressing "serious doubt [that] the judicial mind is really capable of applying the fine

gradations of deference that the varying formulae may indicate." *New II*, 448 F.3d at 112.

Eschewing a precise formulation of the applicable standard, the D.C. Circuit simply repeated

"*Councilman's* statement that errors must be fundamental to void a court-martial judgment on

collateral review" and, because "non-habeas review is if anything more deferential than habeas

review of military judgments . . . a military court's judgment clearly will not suffer such a

defect if it satisfies *Burns*'s 'fair consideration' test." *Id.* "Although in *New II* the [D.C.

Circuit] did not describe the exact degree of deference accorded to the military courts, its

analysis suggests there are two steps in applying the 'full and fair consideration' standard: (1) a

review of the military court's thoroughness in examining the relevant claims, at least where

thoroughness is contested; and (2) a close look at the merits of the claim, although with some

degree of deference . . . ." *Sanford*, 586 F.3d at 32.   Regardless, under any of these standards,

the plaintiff's claims fail.


## IV.  ANALYSIS

The plaintiff's complaint contains two causes of action.  In the first cause of action, the

plaintiff collaterally attacks the CAAF's affirmance of his conviction arguing that the affirmance

is unconstitutional because it does not conform to Supreme Court standards as articulated in

*Mesarosh*.  In his second cause of action, the plaintiff argues that the CAAF did not provide him

with a full and fair hearing because, in its initial proceeding, it granted review of but did not

resolve his claim of error concerning the trial judge's exclusion, during cross-examination, of

evidence concerning TN's abortion after that issue became relevant and material to her testimony, but in its later proceeding it declined to re-grant review of the same issue.  For the reasons set forth below, both of the plaintiff's causes of action must be dismissed.

## A.  Cause of Action #1

As set forth above, the plaintiff collaterally attacks the CAAF's affirmance of his conviction arguing that the affirmance is unconstitutional because it does not conform to Supreme Court standards as articulated in *Mesarosh*.  This argument is based on the contention that the subsequently revealed problems with Mills's lab work so discredited his testimony that, consistent with *Mesarosh*, a new trial is required.  As set forth below, the plaintiff's first cause of action fails because the CAAF gave this argument full and fair consideration, the judgment is not void, and there is nothing in the current record demonstrating that the affirmance of the conviction did not conform to relevant Supreme Court standards.

### 1.  The Defendant's Waiver Argument

Before the Court addresses the merits of the plaintiff's argument, it must address the defendant's argument that the plaintiff waived the constitutional argument based on *Mesarosh*. The defendant argues that, even if the plaintiff's claims rise to the level of constitutional claims that would be subject to this Court's jurisdiction, the plaintiff's failure to raise the constitutional claim on direct appeal within the military court system has resulted in its waiver. Def.'s Mot. at14.  Rather than specifically challenging the court-martial panel's verdict based on the deprivation of a constitutional right, the defendant asserts that the plaintiff instead sought a new trial based solely on his claim of newly discovered evidence.  Thus, according to the defendant, because the plaintiff did not raise a constitutional claim on direct appeal, he waived his right to collaterally attack his conviction before this Court based on a violation of constitutional rights.

*See Aguilar Mortega v. Dep't of Defense*, 520 F. Supp. 2d 1, 5 (D.D.C. 2007); *see also Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 366 (D.C. Cir. 1993).

This Court has recognized that because military courts are independent of the federal courts, military courts are analogized to state courts when individuals convicted by court-martial seek redress in federal courts. *Aguilar Mortega*, 520 F. Supp. 2d at 5. Thus, when reviewing a collateral attack on a court-martial, federal courts apply waiver rules identical to those applied to state courts to bar claims raised for the first time in federal court. *Kendall*, 996 F.2d at 366 (citing *Engle v. Isaac,* 456 U.S. 107 (1982) (holding that failure to comply with state contemporaneous objection rule bars federal review absent a showing of cause and prejudice)).

This waiver standard has been applied in practice to mean that a plaintiff who failed to raise an issue on direct appeal in the military justice system has waived his right to subsequently raise that issue in the federal courts. *See Aguilar Mortega*, 520 F. Supp. 2d at 5. In *Aguilar Mortega*, the plaintiff rejected the presiding military judge's offer to decline the defense counsel detailed to represent him, declined to hire civilian counsel of his choice, declined to exercise his right to obtain a military lawyer, and expressed no dissatisfaction with the defense counsel's performance. *Id.* On collateral review, the *Aguilar Mortega* Court held that the plaintiff's failure to raise issues pertaining to the quality of the defense counsel's services or any other alleged errors in the military courts resulted in a waiver barring review of those issues in this court. *Id*; *see also Kendall*, 996 F.2d at 366.

The defendant argues that the constitutional claims that the plaintiff raises here – *i.e.*, that the CAAF's affirmance of his conviction despite Mills's post-trial discrediting violates the constitutional principles set forth in *Mesarosh* – were not raised before the military courts and

are, thus, waived and cannot be raised here for the first time. But the Court does not have sufficient information to address that waiver claim.

To be sure, the dissenting opinion in the plaintiff's most recent appeal before the CAAF explicitly analyzed *Mesarosh* and its application to the plaintiff's case in light of the post-trial discrediting of Mills. The parties seem to assume that the dissent did so *sua sponte*. Given that the plaintiff argues that his *criminal conviction* violates the *constitution* based on the *misconduct* of one of the government's primary witnesses, this Court is hesitant to find a waiver of such an important claim without substantial justification to do so. But without the briefs that were filed during the proceedings in the military courts, it is impossible for this Court to fully assess whether the *Mesarosh* issue was raised, either explicitly or implicitly, before the military courts. Because the dissenting judge clearly reached the very issue the defendant now claims was waived, without assessing the actual briefs filed, this Court is not in a position to determine with certainty whether the dissenting judge reached the issue *sua sponte* or based on the defendant's arguments (even if not explicitly based on *Mesarosh*). Consequently, the Court cannot clearly determine whether this constitutional claim was waived. As such, the Court declines to dismiss the constitutional claim based on a waiver theory.

## 2.  Full and Fair Consideration

As set forth above, after the issues concerning Mills's lab work came to light, the military courts held extensive proceedings. The CAAF set aside the NMCCA's opinion, returned the record of trial to the Judge Advocate General of the Navy for a *Dubay* hearing, and directed that the record be returned to the CAAF. The military judge conducted two subsequent *Dubay* hearings, both of which addressed the issues of Mills's problematic lab work. In the end, in an extensive and thorough opinion, the CAAF, applying a newly discovered evidence standard,

concluded that the plaintiff was not entitled to a new trial because he had not demonstrated that the new evidence probably would have resulted in a substantially more favorable result for him. *Luke*, 69 M.J. at 318.

The CAAF's opinion carefully assessed all of the evidence presented.  Specifically, the CAAF noted the military judge's findings of fact following the *Dubay* hearing that: despite the problems with Mills's lab work, there was no evidence that he had altered any results to falsely show the presence or absence of DNA in a sample or that his failure to follow proper procedures was an attempt to improperly influence or alter the outcome of the DNA analysis; in the plaintiff's case, Mills had prepared the sample but not performed the DNA analysis, thus reducing the opportunity he could have had to falsify the results; and, in the plaintiff's case, Mills had no motive to falsify results, such as the desire to cover up a mistake, as he had in the documented case.  These findings, entitled to deference, strongly rebut any argument that Mills may have purposefully falsified the DNA results.  The CAAF also noted the military judge's findings that: the panties could not have contaminated the bra with the plaintiff's DNA because his DNA was not found on the panties; and, neither the bed sheet or any other item could have contaminated the bra during the serology portion, because the sample of the bra was cut and sealed in a test tube before the other items were opened.  These findings, also entitled to deference, strongly rebut any argument that Mills's sloppiness resulted in the presence of the plaintiff's DNA on the bra.   Thus, absent any indication of falsified results or contaminated samples, the finding of the plaintiff's DNA on the bra is best explained by plaintiff having come into contact with it before it was collected as evidence.  *Luke*, 69 M.J. at 315.  Moreover, although the CAAF noted that Mills's serological work raised concerns in fifteen of thirty-seven cases he handled between 1995 and 1999, it further noted that Mills's screening techniques may

have resulted in questionable negative results where DNA was present, not false positives where no DNA was present. *Id.* at 316. Based on these factual findings, the CAAF concluded that the new evidence would merely have provided impeachment of Mills's testimony; it would not have shown that Mills's credibility was intertwined with the credibility of the DNA evidence. *Id.* Because the plaintiff failed to show a probability of contamination in the serology screening accounting for his DNA being present on the bra, and the plaintiff being left with the prospect of rebutting compelling DNA statistics with a weak defense (concerning his masturbation and thumb-sucking), the CAAF concluded that the newly discovered evidence would probably not have resulted in a more favorable result for the plaintiff. As such, he was not entitled to a new trial. This was a full and fair consideration of the plaintiff's arguments.

Given the thoroughness with which the CAAF treated the plaintiff's arguments, he is left to attack his conviction based on the destruction of the DNA evidence in his case which prohibited retesting of the samples. The plaintiff argues that the military court's review could not have provided full and fair consideration because the destruction of the DNA evidence prevented it from being examined during the *Dubay* hearings. Pl's Mot. Opp'n at 14. Thus, the plaintiff concludes, "[w]ithout the ability to retest the evidence, it simply cannot be said that the military courts' review of [plaintiff's] new evidence claims were sufficiently thorough." *Id.* But the plaintiff fails to establish that re-testing of the evidence would have made any difference whatsoever.

Although re-testing could have clearly shown that there was no DNA on the items or that the DNA was not the plaintiff's, that is not what is at issue here. It is unclear whether the plaintiff challenges the conclusion that his DNA was on the bedsheet (he testified that he masturbated and fell asleep on that bed subsequent to TN's visit). Presumably, he challenges the

analysis indicating that TN's DNA was on the bedsheet (corroborating her testimony that he examined and assaulted her on that bed).  And he presumably also challenges the finding that his DNA was found on the bra (corroborating TN's testimony that he sucked on her breast during the exam).  But the plaintiff has not established that re-testing of the now-destroyed samples would be capable of determining that the presence of TN's DNA on the bedsheet or his DNA on the bra was due to cross-contamination from other items (either intentional or due to negligence) rather than from the plaintiff and TN having caused their bodily fluids to be on those items through their contact with them.  Thus, without the context of what re-testing would be capable of scientifically establishing, the Court cannot determine whether the destruction of the evidence had any significance whatsoever to the plaintiff's specific claim of contamination.[6]

And it is similarly unclear whether retesting would support a claim of fabrication. Because Chase performed the actual DNA testing, it does not appear that re-testing could establish that Mills fabricated results, inconsistent with the actual samples, to falsely implicate the plaintiff.  And, regardless, Mills has never been shown in the past to intentionally alter samples in order to falsely implicate the guilt of a defendant.  *Luke*, 69 M.J. at 317 ("there is no evidence from either the *Dubay* hearings or the USACIL report that Mills intentionally contaminated a sample in order to support a prosecution.").  Thus, the plaintiff has failed to demonstrate that re-testing of the now-destroyed samples would have been capable of supporting his specific claims.

The plaintiff is essentially asking that this Court reweigh the evidence and substitute its judgment for that of the military courts.  This Court is not empowered or inclined to do so.

---

[6] And as the CAAF noted, "the military judge at the first *Dubay* hearing found that neither the bedsheet nor the bra could have been contaminated by other items because 'the sample of the bra was cut and sealed in a test tube before the other items were opened.'" *Luke*, 69 M.J. at 317 (quoting *Luke*, 64 M.J. at 197).

Given the deferential standard that is to be applied in cases such as this, this Court is not in a

position to conclude that the military courts' full, fair and thorough analysis of the plaintiff's

arguments were unreasonable or incorrect.

### 3. Conformity with Supreme Court Standards

The plaintiff's primary argument in challenging his conviction is that the CAAF's

affirmance of the conviction despite the problems with Mills's lab work is unconstitutional

because it fails to conform to Supreme Court standards set forth in *Mesarosh*, 352 U.S. at 1.

But, contrary to the plaintiff's argument, the standard set forth in *Mesarosh* does not apply to the

facts of the plaintiff's case. Accordingly, the CAAF affirmed his conviction in conformity with

Supreme Court standards.

The facts and posture of *Mesarosh* are easily distinguished from the case at hand. In

*Mesarosh*, the Government had questioned the credibility of *its own witness*, who had lied under

oath, in a submission from the Solicitor General that had "wholly discredited" him. The witness

was "conceded by the government to have testified . . . in such a bizarre fashion as to raise the

inference that he was either an inveterate perjurer or a disordered mind." *United States v. Stofsky*,

527 F.2d 237, 246 (2d Cir. 1975) (discussing the *Mesarosh* holding). The *Mesarosh* Court

distinguished the government's attack on its own witness from a defense motion for a new trial

pursuant to Federal Rule of Criminal Procedure 33. *Mesarosh*, 352 U.S. at 7-8. The Court noted

that it was "not dealing . . . with a motion for a new trial initiated by the defense under Rule 33

of the Federal Rules of Criminal Procedure presenting untruthful statements by a government

witness subsequent to the trial as newly discovered evidence affecting his credibility at the trial.

Such allegation by the defense ordinarily will not support a motion for a new trial, because new

evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated

statement of the courts, an adequate basis for the grant of a new trial." *Id.* (internal citation omitted).

Unlike the extreme circumstances in *Mesarosh*, the CAAF did not act unreasonably in determining that the plaintiff was not entitled to a new trial because Mills's misconduct did not undermine the integrity of the conviction.  Mills was not entirely discredited in the same way the witness in *Mesarosh* was; the plaintiff himself describes Mills's conduct as potentially careless and less-than-thorough, but he falls exceedingly short of presenting any evidence that Mills falsified the serological results to support a conviction. Pl.'s Mot. Opp'n at 17 ("The investigations into Mr. Mills' misconduct revealed history of incompetence, cross-contamination, and violation of laboratory protocols[.]").  There is no evidence in the plaintiff's specific conviction that Mills utilized improper procedures, cross-contaminated samples, or perjured himself in any way.  Thus, the plaintiff must rely on problems with Mills's work in other cases in order to, by inference, discredit Mills's work in his case.  But in *Mesarosh* there was no question that the witness had perjured himself or suffered from such profound mental illness that his testimony was incredible.  Such extreme circumstances entirely discrediting Mills's testimony are not present here.

Further still, appellate courts have significantly narrowed the breadth of the application of *Mesarosh*. *See, e.g.*, *United States v. Berry*, 624 F.3d 1031, 1043 (9th Cir. 2010) (applying *Mesarosh* only in "those rare situations where the credibility of a key government witness has been wholly discredited by the witness' commission of perjury in other cases involving substantially similar subject matter") (internal citation and quotation omitted; *United States v. Burns*, 495 F.3d 873, 875 (8th Cir. 2007)) ("The *Mesarosh* holding has no application to the present case because there is no evidence whatever that [the witness] was a practiced perjurer or

suffered from some disqualifying mental condition."); *United States v. Anderson*, 933 F.2d 1261, 1275 (5th Cir. 1991) (declining to apply *Mesarosh* where no person "presented any proof that [the witness] gave false testimony about material facts, and there has been no recantation of testimony as to material facts."); *Stofsky*, 527 F.2d at 246 (noting that *Mesarosh* was a *sui generis* case, and, in light of new evidence that the witness previously engaged in perjury, balancing the potential damage to that witness's credibility against the possibility that the new evidence would be construed as evidence of a broader scheme rather than produce a different verdict for the defendant to find that the disclosure of perjury probably would not have produced a different verdict).  Thus, the Court is not inclined to give *Mesarosh* the broad application that the plaintiff suggests.

The CAAF treated the issues concerning the problems with Mills's lab work as newly discovered evidence that would have served as material for the impeachment of Mills, but would not have undermined the compelling DNA statistics.  Even the *Mesarosh* Court distinguished the facts it faced (the complete discrediting of a perjurer) from the type presented here (impeachment evidence only).  Thus, because *Mesarosh* is inapposite to the plaintiff's case, the CAAF did not have to apply its principles to the plaintiff's case making the affirmance of the plaintiff's conviction entirely consistent with Supreme Court standards.  As such, because the military courts gave the plaintiff's arguments full and fair consideration throughout the proceedings, the judgment is not void, the CAAF's affirmance conforms to Supreme Court standards, and the plaintiff's first cause of action must be dismissed.

### B.  Cause of Action #2

The plaintiff further claims that the last CAAF appellate panel's decision to uphold "the trial judge's exclusion, during cross-examination, of an alleged victim's abortion after it became

relevant and material rebuttal to the victim's testimony" deprived him of full and fair consideration. Pl.'s Mot. in Opp'n at 19.  The plaintiff's argument is based on the fact that the CAAF had previously granted discretionary review of the issue, had the issue briefed, and heard oral argument, but, after the case was remanded based on another issue and the case was subsequently back before it, the CAAF declined to re-exercise its discretion to review the same issue.  But the plaintiff has failed to show that once the CAAF has granted discretionary review, it must exercise its discretion in the same way when the case is subsequently back before it.  And because the plaintiff's claim is based solely on this argument, and makes no argument that the intermediate appellate court did not fully and fairly consider the argument, this Court holds that the military courts gave "full and fair consideration" to the plaintiff's claims.

There is no dispute that the CAAF's review of a party's claim of error is entirely discretionary.  Thus, the CAAF had no obligation to accept the issue for resolution in the first instance.  *See Sanford*, 586 F.3d at 30 ("A further appeal may be had upon petition to the [CAAF] *at that court's discretion*.") (emphasis added).  When the case was back before it, the CAAF simply chose not to exercise its discretion in the same way.  Because the issue was specifically referenced in a footnote as an issue for which review had been initially granted, it is clear that the CAAF's exercise of discretion to not review that issue upon the case's return to the court was intentional and not an oversight. *Luke*, 69 M.J. at 311, n. 2.

Thus, the plaintiff's only viable argument would be that once a panel exercises its discretion to hear an issue, it must exercise its discretion in the same way when the case has a subsequent trip to the court.  But, although the plaintiff cites cases supporting the notion that once a panel accepts an issue for resolution it must address the issue, even if in summary fashion, the plaintiff cites no cases involving the facts presented here – *i.e.*, an initial acceptance of an

issue for review with a later explicit exercise of discretion denying review of the same issue upon a subsequent trip to the court.  Because the CAAF's review of a claim of error is entirely discretionary, the Court views the procedural posture of this case as similar to a Supreme Court case in which the Court has granted *certiorari*, has had full briefing, and has heard argument, but subsequently determines that *certiorari* was improvidently granted.  *See, e.g.*, *Vasquez v. United States*, 132 S. Ct. 1532 (2012); *First American Fin. Corp. v. Edwards*, 132 S. Ct. 2536 (2012). In this context, no one could plausibly argue that the Supreme Court is bound by its earlier exercise of discretion to hear an issue.  Likewise here, the CAAF did not have to grant discretionary review of the plaintiff's claim of error simply because it had previously done so. Consequently, this Court holds that the plaintiff's claim received full and fair consideration by the military courts below and the plaintiff's second cause of action is dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

## V.  CONCLUSION

Because the plaintiff's claims were given a full and fair consideration throughout the proceedings in the military court system and the judgment is not void, and because there is nothing on the record to demonstrate that the CAAF's affirmance of the plaintiff's conviction failed to conform to relevant Supreme Court standards, the Court grants the defendant's motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of May, 2013.

RUDOLPH CONTRERAS
United States District Judge